Steven M. Schatz
Bahram Seyedin-Noor
Brian G. Mendonca
WILSON SONSINI GOODRICH & ROSATI
PROFESSIONAL CORPORATION
650 Page Mill Road
Palo Alto, California 94304
Tel.: (650) 493-9300
Fax: (650) 493-6811
bnoor@wsgr.com

James D. Metzger
WILSON SONSINI GOODRICH & ROSATI
PROFESSIONAL CORPORATION
1301 Avenue of the Americas
New York, NY 10019-6022
Tel: (212) 999-5800
Fax: (212) 999-5899
jmetzger@wsgr.com

*Attorneys for Plaintiff Ingres Corporation*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| INGRES CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>XING, SA, and Francois Peloffy<br><br>Defendants. | Civil Action No.<br><br>ECF Case<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT** |

Plaintiff Ingres Corporation ("Ingres"), by and through its attorneys, Wilson Sonsini Goodrich & Rosati, P.C., for its Complaint against defendants Xing, SA ("Xing") and Francois Peloffy ("Peloffy"), alleges as follows:

### NATURE OF THE ACTION

1. Ingres is a leading provider of open source database management software and support services.

2. Ingres seeks a declaratory judgment that Ingres is properly the assignee of, and/or successor-in-interest to, CA, Inc. ("CA", f/k/a Computer Associates International, Inc.) with respect to the Source Code License Agreement between CA and defendant Xing, a French company, that was entered into as of August 2, 1995 ("License Agreement"). The License Agreement granted CA rights to certain Xing software. Francois Peloffy, the founder of Xing, initially alleged that CA assigned the License Agreement to Ingres without having the right to do so, claiming that CA's assignment of the License Agreement breached the License Agreement. Following discussions regarding Peloffy's allegations, Peloffy's counsel sent Ingres and CA a letter dated July 22, 2008. In that letter, Peloffy changed his position and claimed—for the first time—that he himself owns the rights to the Xing software and had licensed the software to Xing. Peloffy claimed that to the extent that his license with Xing permitted Xing to sub-license the software to others, such sub-license, including the License Agreement in dispute, became null and void in 1999 when Xing allegedly went bankrupt. Peloffy repeatedly has threatened to commence legal actions against CA and Ingres for breach of the License Agreement and/or copyright infringement unless CA and/or Ingres purchase the source code for certain Xing software; his most recent demand was for €15 million (fifteen million Euros).

3. Contrary to Peloffy's allegations, CA was authorized to assign the License Agreement to Ingres. Pursuant to a certain Contribution and Stockholders Agreement ("C&S Agreement") dated July 1, 2005, CA transferred, assigned and delivered to Ingres, and Ingres became CA's successor-in-interest to, all of its rights, title, and interest in and to the License Agreement and/or the intellectual property referenced therein. Furthermore, Ingres's use of the Xing software does not violate the terms of the License Agreement. Ingres seeks a judgment declaring that (i) the License Agreement remains fully enforceable and in effect, (ii) CA had, and

has, the unrestricted right to assign the License Agreement to Ingres, (iii) Ingres, through the C&S Agreement, is properly the assignee of, and CA's successor-in-interest to, the License Agreement, (iv) Ingres's use and distribution of Xing software does not violate the License Agreement; (v) Peloffy is not entitled to any payment from Ingres with respect to Ingres's use of the Xing Software or Source Code (as defined in the License Agreement), and (vi) Awarding Plaintiff its costs and such other and further relief as the Court may deem proper.

### THE PARTIES

4. Plaintiff Ingres is a domestic corporation duly organized and existing under the laws of the State of Delaware, with headquarters located at 500 Arguello Street, Suite 200, Redwood City, CA 94063 and offices located at 9 West 57th Street, Suite 1510, New York, NY 10019.

5. Defendant Xing is and/or was, upon information and belief, a foreign corporation operating and organized under the laws of France with a principal place of business located at CNIT – World Trade Center, BP 484, 92053 Paris la Defense, France.

6. Defendant Francois Peloffy was, upon information and belief, the founder of Xing, has represented himself to Ingres and CA as having the authority to enforce the License Agreement and/or any intellectual property rights relating to Xing's software, and has threatened litigation against Ingres asserting that Ingres was not a valid assignee of certain rights under the License Agreement.

7. Non-party CA, formerly known as Computer Associates International, Inc., is a domestic corporation, duly organized and existing under the laws of the State of Delaware, with an office and principal place of business located at One CA Plaza, Islandia, New York.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1332 and 1367.

9. The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between a citizen of a State and a citizen and corporation of a foreign state.

10. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(c) and (d).

11. Venue is also proper pursuant to Section 10.8 of the License Agreement, which provides that:

> [Xing] unconditionally agree[s] that any action between [Xing and CA] arising under or relating to this [License] Agreement . . . shall lie exclusively within the jurisdiction of the state and/or federal courts located in New York, Nassau or Suffolk County, New York, [Xing] irrevocably waives the right to object to venue in such court on the basis of forum non conveniens or any other basis and [Xing] unconditionally consents to the exercise of, and irrevocably submits to, exclusive jurisdiction of such courts in any action commenced . . . .

## FACTS AND BACKGROUND

12. CA is an independent computer software and information technology company. It develops and markets computer software products and services used by businesses and other organizations to manage and secure computer data and networks.

13. Peloffy and/or Xing, upon information and belief, developed and manufactured two computer software programs, a report writer known as Xi-Writer and a documentation generator known as Xi-9000 (collectively, the "Xing Products").

14. On or about August 2, 1995, CA and Xing entered into the License Agreement. Peloffy signed the License Agreement, which identified him as "President" of Xing.

15. In the License Agreement, Xing and Peloffy stated explicitly that the licensed software did not incorporate any third-party product or code, would not infringe any intellectual property right of any third party and that Xing had no royalty obligations to any third parties with regard to the licensed software. (License Agreement, at § 6.2(b)-(c).)

16. Under the License Agreement, Xing granted to CA a worldwide, non-exclusive, perpetual and royalty-free license to the Software (as defined in the License Agreement) and Major Releases (as defined in the License Agreement) of the Xing Products, including the Source Code (as defined in the License Agreement) thereof. (License Agreement, at § 3.1.) The License Agreement permitted CA to, among other things, modify, alter, enhance, extend and create derivative works of the Software and Major Releases (including the Source Code) and to merge or combine such Software and Major Releases with other CA software products, as well as "to market, distribute, transfer and sublicense the Software and Major Releases in object code format throughout the world, directly and indirectly, to distributors, resellers and customers." (License Agreement, at § 3.1.) The License Agreement further provides that the License Agreement "shall inure to the benefit of and be binding upon each of the parties and their respective successors and permitted assigns." (License Agreement, at § 10.3.)

17. In consideration of the rights and licenses granted to CA pursuant to the License Agreement, CA paid to Xing one-time licensing fees totaling $2,500,000, one half of which was paid, pursuant to the terms of the License Agreement, upon acceptance of initial versions of the

Xing Products and the balance of which was paid upon acceptance of the Major Releases of those products. (License Agreement, at § 5.1.)

18. After the License Agreement was executed and the Software for the Xing Products was delivered by Xing and accepted by CA, CA incorporated some of the licensed Xing Software into a product now known as OpenROAD (Open Rapid Object Application Development). OpenROAD is a database-centric, object-oriented, 4GL (*i.e.*, fourth-generation) application development tool that allows users to develop and deploy sophisticated business applications.

19. On or about July 1, 2005, CA entered into the C&S Agreement with Garnett & Helfrich Capital, L.P. ("Garnett") and Malta Holding Company.

20. CA, under the C&S Agreement, contributed certain assets to Ingres, including the OpenROAD suite of products. Through the C&S Agreement, CA transferred, assigned and delivered to Ingres all of its rights, title, and interest in and to the License Agreement and/or the intellectual property referenced therein. As such, Ingres became a successor-in-interest to, and/or permitted assign of, CA.

21. In or about September 2007, Peloffy, who signed the License Agreement as President of Xing, contacted CA to state his objections to CA's assignment of the License Agreement to Ingres.

22. Since then, Peloffy has alleged that CA's assignment of the License Agreement is a breach of the License Agreement and that Ingres's use of the Xing Software violated his copyrights. Peloffy threatened to commence legal actions against CA and Ingres for breach of

the License Agreement and copyright infringement unless CA and/or Ingres paid him money. In his initial correspondence, Peloffy took the position that the License Agreement was operative and sought to enforce its terms according to his interpretation of them.

23. Later, Peloffy's counsel sent Ingres and CA a letter dated July 22, 2008. In that letter, Peloffy changed his position and claimed—for the first time—that he owns the rights to the Xing Software and had licensed the software to Xing. Peloffy claimed his license with Xing permitted Xing to sub-license the software to others, but that the License Agreement became null and void in 1999 when Xing allegedly went bankrupt. Peloffy threatened to commence legal actions against CA and Ingres for breach of the License Agreement and copyright infringement unless CA and/or Ingres paid him €15 million (fifteen million Euros).

24. Ingres disputes Peloffy's assertion that CA was not entitled to assign the License Agreement and disputes Peloffy's assertion that it has improperly used and/or is improperly using Xing Software. Ingres is distributing Xing Software in a manner permitted by the License Agreement.

### FIRST CLAIM FOR RELIEF
(Declaratory Judgment)

25. Ingres repeats the allegations in paragraphs "1" through "24."

26. The License Agreement licensed CA to use and sell the Xing Software in specified ways. It remains enforceable.

27. The License Agreement does not restrict CA's right to assign the License Agreement.

28. CA, through the C&S Agreement, transferred, assigned and delivered to Ingres all of its rights, title, and interest in and to the License Agreement and/or the intellectual property referenced therein. Ingres is therefore CA's successor and/or permitted assign to CA's rights and obligations under License Agreement.

29. Notwithstanding CA's right to assign its rights under the License Agreement to Ingres, Peloffy has alleged both that (i) the License Agreement was terminated by Xing's bankruptcy and that Peloffy is the true owner of the Xing Software which CA used and Ingres is now using; and (ii) CA's assignment of the License Agreement breached the License Agreement. Peloffy has threatened to commence legal actions against CA and Ingres for breach of the License Agreement and copyright infringement unless his monetary demands are met.

30. As a result of Peloffy's threats and demands and Ingres's rejection of those demands, there exists a definite and concrete dispute between the parties regarding whether the License Agreement remains in effect, whether the License Agreement was assignable by CA, whether CA assigned the License Agreement to Ingres, and whether Ingres has improperly used and/or is improperly using Xing Software. Accordingly, an actual and justiciable controversy exists between the parties, concerning their respective rights and obligations under the License Agreement and C&S Agreement.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for an order:

31. Declaring that the License Agreement remains fully enforceable and in effect.

32. Declaring that CA has the unrestricted right to assign the License Agreement under the terms of that agreement.

33. Declaring that Ingres, through the C&S Agreement, is properly the assignee of, and/or CA's successor-in-interest to, the License Agreement.

34. Declaring that Ingres's use of the Xing Products, Major Releases, Software and Source Code and its distribution of the Xing Software and/or portions thereof does not violate the terms of the License Agreement.

35. Declaring that Peloffy is not entitled to any payment from Ingres with respect to Ingres's use of the Software or Source Code.

36. Awarding Plaintiff its costs and such other and further relief as the Court may deem proper.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

Respectfully submitted,

Dated: August 4, 2008

*Steven Schatz /bsn*

Steven M. Schatz
Bahram Seyedin-Noor
WILSON SONSINI GOODRICH & ROSATI
PROFESSIONAL CORPORATION
650 Page Mill Road
Palo Alto, California 94304
Tel.: (650) 493-9300
Fax: (650) 493-6811
bnoor@wsgr.com

James D. Metzger
WILSON SONSINI GOODRICH & ROSATI
PROFESSIONAL CORPORATION
1301 Avenue of the Americas
New York, NY 10019-6022
Tel: (212) 999-5800
Fax: (212) 999-5899
jmetzger@wsgr.com
*Attorneys for Plaintiff Ingres Corporation*